# COURT OF APPEALS
# DECISION
# DATED AND FILED

## August 11, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2025AP271**
**2025AP1080**

Cir. Ct. No. 2023CV231

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

NO. 2025AP271

CMM HOLDINGS INC., DREAMSTRUCTURE DESIGNBUILD LLC, JASON JOHNSON, ABIGAIL JOHNSON AND CHARLES MITCHELL ASSOCIATES, LLC,

   PLAINTIFFS-APPELLANTS,

   V.

TRIBELLA PROPERTIES LLC, TRIBELLA PROPERTIES - MN, LLC, TANAE KLEWICKI AND JOSEPH KLEWICKI,

   DEFENDANTS-RESPONDENTS.

---

NO. 2025AP1080

CMM HOLDINGS, INC., DREAMSTRUCTURE DESIGNBUILD, LLC, JASON JOHNSON, ABIGAIL JOHNSON AND CHARLES MITCHELL ASSOCIATES, LLC,

   PLAINTIFFS-APPELLANTS,

**V.**

**TRIBELLA PROPERTIES, LLC AND TRIBELLA PROPERTIES-MN, LLC,**

**DEFENDANTS-RESPONDENTS.**

---

APPEALS from a judgment and an order of the circuit court for St. Croix County: R. MICHAEL WATERMAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. CMM Holdings, Inc., Dreamstructure DesignBuild, LLC, Jason Johnson, Abigail Johnson, and Charles Mitchell Associates, LLC, (collectively, "CMM") appeal from a judgment entered in favor of Tribella Properties, LLC, Tribella Properties – MN, LLC, Tanae Klewicki, and Joseph Klewicki (collectively, "Tribella").[1] CMM also appeals from an order denying its motion for relief from judgment pursuant to WIS. STAT.

---

[1] The judgment in question, which was entered on January 27, 2025, was final as to Tanae Klewicki and Joseph Klewicki, but nonfinal as to Tribella Properties, LLC, and Tribella Properties – MN, LLC. On May 22, 2025, this court entered an order granting CMM's petition for leave to appeal the January 27, 2025 judgment and staying further proceedings in the circuit court pending appeal. *See* WIS. STAT. RULE 809.50(3) (2023-24). That appeal was docketed as Appeal No. 2025AP271.

All references to the Wisconsin Statutes are to the 2023-24 version.

2

§ 806.07(1)(b).[2]  For the reasons explained below, we affirm both the judgment and the order.[3]

## BACKGROUND

¶2      Beginning in 2013, CMM and Tribella entered into agreements with respect to three different real estate development projects: (1) the Troy Burne Project; (2) the Foxglove Project; and (3) the Marquee Court Project.[4]

¶3      The Troy Burne Project was a development of single-family homes in Hudson, Wisconsin.  Tribella agreed to "provide financing and fund carrying costs for" the lots on which the homes were to be built and for the construction of a "model/spec home."  Tribella also agreed that CMM would serve as the exclusive builder for the lots in the Troy Burne Project.  In exchange, CMM, as the builder, agreed to pay Tribella a 5% builder fee on all final sales of completed homes.  For lot sales, Tribella would receive the first $10,000 in net profits from

---

[2] On June 3, 2025, this court entered an order granting CMM's petition for leave to appeal the nonfinal order denying CMM's motion for relief from judgment, and we consolidated that appeal, which was docketed as Appeal No. 2025AP1080, with Appeal No. 2025AP271.

[3] Tribella also asks us to vacate the stay of the circuit court proceedings that we imposed in our May 22, 2025 order.  Given the issuance of this opinion affirming the circuit court's judgment and order, we now vacate the previously imposed stay of further proceedings in the circuit court.

[4] On appeal, Tribella clarifies that "[t]echnically, these projects were entered by various combinations of the corporate entities that are parties to this action."  Tribella further clarifies that "[o]n one side [were] Tribella Properties, LLC and Tribella Properties – MN, LLC, both of which are owned and operated by Joseph and Tanae Klewicki," and "[o]n the other side [were] CMM Holdings, Inc.; Dreamstructure DesignBuild, LLC; and Charles Mitchell Associates, LLC, all of which are owned and operated by Jason and Abigail Johnson."  Tribella asserts—and CMM does not dispute—that "the specific corporate identities are not especially relevant to" the issues raised in these appeals.

each lot sold, CMM would receive the second $10,000 in net profits, and they would split all net profits above $20,000 on a 50/50 basis.

¶4    The Foxglove Project was a development of five multi-family condominium buildings. The agreement for the Foxglove Project again provided that Tribella would "provide financing and fund carrying costs for" the lots on which the condominium buildings were to be built and that CMM would serve as the exclusive builder for the project. CMM and Tribella agreed to split the net profits and losses for the Foxglove Project equally.

¶5    Finally, the Marquee Court Project involved Tribella's purchase of land in Stillwater, Minnesota, and CMM's agreement to remodel an existing home on that property and to develop the remaining land into additional lots for single-family homes. Unlike the Troy Burne and Foxglove Projects—which involved written agreements between the parties—the Marquee Court Project involved an oral agreement. Tribella asserts that the terms of that oral agreement are undisputed and that "Tribella and CMM agreed to share profits and losses on lot sales 50/50, and CMM agreed to pay Tribella a percentage on the builds." CMM contends, however, that the terms of the oral agreement *are* disputed, as CMM "maintain[s] that there was no loss-sharing agreement."

¶6    In April 2018, the parties entered into an agreement that has been referred to in this ligation as "the Payback Agreement." The Payback Agreement was drafted by Joseph Klewicki, who is not an attorney.

¶7    Section 1 of the Payback Agreement—entitled "Statement of Facts"—provided as follows:

> [CMM] has drawn funds for construction purposes by line
> item from Sworn Construction Statements for buildings 4

> & 5 in Foxglove Circle. These funds were signed for and accepted by [CMM] for work and materials. [CMM] provided Title Company with Lien waivers that stated it had been paid for the amount disbursed. However, [CMM] failed to pay subcontractors and suppliers for all labor and materials furnished. The total amount of funds drawn by [CMM] that remain unpaid to Subcontractors and suppliers for the Foxglove Circle project as of the date of this document, April 4, 2018 now total $563,544.87. In addition, [CMM] has an outstanding amount due on Marquee Court to suppliers of approximately $45,000.00. This amount to be added to the total. [CMM] also has $17,281.17 borrowed from [Tribella] that will be added to the total.

Thus, the Payback Agreement reflected that the total amount that CMM owed to Tribella was $625,826.04.

¶8 Under Section 3 of the Payback Agreement—entitled "Performance terms"—CMM agreed to complete certain specified "warranty items" on all five buildings in the Foxglove Project at its own expense and to "complete all units in building 5 at the costs outlined in Section 9 as expected by [Tribella] on the schedule set by [Tribella]." CMM also agreed that it would not hire subcontractors or order supplies without Tribella's prior written approval and that Tribella would take over responsibility for paying all subcontractors and suppliers.

¶9 Section 4 of the Payback Agreement then outlined CMM's payment obligations for the money that it owed to Tribella. Specifically, Section 4 provided that CMM "agrees to pay [Tribella] the princip[al] amount owed detailed in Section 1 plus monthly interest holding costs. Total is estimated as $625,826.04." Section 4 further provided that "[m]onthly interest holding cost shall be calculated the last day of each calendar month in the manner: Princip[al] balance multiplied by (Prime Rate as published in the Wall Street Journal at the

5

end of each calendar month + 1%)" and that this "[h]olding cost" would be "due and payable by the 10th day of the month."

¶10    Section 2 of the Payback Agreement, in turn, stated that upon execution of the agreement, CMM would provide the deeds to six properties to Tribella as collateral for CMM's obligations under the Payback Agreement. Section 2 also stated that CMM would "have no right to increase mortgages, refinance, leverage, pledge or sell collateral without written authorization from [Tribella] while [Tribella] holds the deeds to these properties."

¶11    Under Section 4 of the Payback Agreement, Tribella agreed that "[u]pon receipt of the full amount" owed by CMM under the agreement, it would "transfer deeds for above collateral to [CMM] removing all [Tribella] interest in collateral."  Section 5 of the Payback Agreement, however, set forth Tribella's remedies in the event that CMM defaulted on its obligations under the agreement. Namely, Section 5 provided that Tribella: (1) "has the right to liquidate, any or all collateral listed in Section 2, if [CMM] does not pay full amount due within 365 days of full execution of this … agreement, in manner [Tribella] sees fit"; (2) "has the right to liquidate any or all collateral listed in Section 2, if [CMM] is late more than 30 days on any payment obligation"; and (3) "has the right to sell any or all collateral listed in Section 2, if [CMM] does not comply with any section in the agreement."  Section 5 further stated that "Net Proceeds from sale of any of the Section 2 listed properties shall be applied to [CMM's] balance"; that "[p]roceeds that exceed [CMM's] balance with [Tribella] will be payable to [CMM] and any other remaining collateral listed in Section 2 shall be released"; and that "[s]hould a balance remain after disposal and sale of properties, that amount will still remain the obligation of [CMM] to pay."

6

¶12     Upon execution of the Payback Agreement, CMM gave Tribella quitclaim deeds for three of the properties identified in Section 2 of the agreement. Tribella contends that "although the total assessed value of the collateral was $2,242,000," it later learned that CMM had significant liens on the properties, such that "[t]he total equity in the collateral was $482,166.95—far less than the amount owed under the Payback Agreement." Tribella asserts that it nevertheless "recorded the deed for one parcel that did have some equity." In contrast, CMM asserts that Tribella "breached the Payback Agreement 28 days after its execution by improperly recording one of the collateral deeds and transferring the property—worth in excess of $2,000,000.00—to [itself] and recording it as a valuable asset of [Tribella's] own."

¶13     In May 2023, CMM filed the instant lawsuit against Tribella, seeking to quiet title to one of the properties listed as collateral in the Payback Agreement—namely, the property for which Tribella had recorded the quitclaim deed. In addition, CMM sought a declaration that the deeds issued to Tribella pursuant to the Payback Agreement were "void and unenforceable" and that the Payback Agreement itself was "void and unenforceable" because it was ambiguous and lacked material terms. CMM also asserted breach of contract claims against Tribella with respect to both the Payback Agreement and the parties' various development agreements. Finally, CMM asserted claims for unjust enrichment, for an accounting, and for a temporary restraining order prohibiting Tribella from taking any action that would negatively affect "the deeds held or titles recorded."

¶14     Tribella filed an answer to CMM's complaint. In its answer, Tribella also asserted counterclaims against CMM for breach of contract, unjust

enrichment, conversion, civil theft, punitive damages, a declaration of interest in real property, and foreclosure.

¶15 The parties subsequently engaged in discovery. In response to discovery requests served by CMM, Tribella produced over 11,000 documents. However, Tribella objected to producing its corporate tax returns, the Klewickis' personal tax returns, and the Klewickis' personal financial statements. In July 2024, CMM moved to compel discovery. Following a hearing, the circuit court granted that motion in part, permitting discovery of Tribella's and the Klewickis' tax returns and the Klewickis' personal financial statements, but only from 2017 onward, and subject to a protective order.

¶16 On July 19, 2024, Tribella moved for partial summary judgment. Tribella asked the circuit court to grant summary judgment in Tribella's favor on all of its counterclaims against CMM and on all of CMM's claims, except for CMM's claim that Tribella had breached the parties' development agreements. The motion also asked the court to dismiss CMM's claims against the Klewickis, individually. Finally, the motion asserted that based on the relevant statute of limitations, the court should "limit all claims by [CMM] to those relating to alleged breaches occurring on or after May 25, 2017."

¶17 Following oral arguments on Tribella's partial summary judgment motion, on December 17, 2024, the circuit court entered a ten-page written decision granting that motion in part. Before reaching the merits of the motion, the court addressed CMM's argument that the motion was premature and that the court should therefore deny it to allow CMM to conduct additional discovery. The court explained:

> [CMM] want[s] to depose the Klewickis and collect more financial records, but [CMM has] not established good cause for delaying summary judgment. Key to this litigation is the validity of the Payback Agreement because it is dispositive of most of the claims and counterclaims in this lawsuit. The Court confines it[s] analysis to the four corners of the agreement, and [CMM has] not demonstrated how more discovery is necessary to interpret it.

¶18 Later on in its decision, the circuit court specifically addressed CMM's request that the court "deny summary judgment so [CMM could] depose the Klewickis to collect evidence of personal liability." The court reasoned:

> [CMM] commenced this case on May 25, 2023. Since then, the Court set a reasonable deadline for dispositive motions and extended that deadline at the parties' request. [CMM has] had adequate time to conduct depositions, but [it has] failed to adequately explain why [it] did not do so in the time allowed. What's more, [CMM has] not made an offer of proof about what evidence [it] think[s] a deposition will produce. Accordingly, the Court finds that [CMM has] not shown sufficient cause to justify delaying summary judgment for more discovery.

(Footnotes omitted.)

¶19 Turning to the merits, the circuit court rejected CMM's argument that the Payback Agreement's provisions "about deeding and liquidating the real estate" were "void and unenforceable" because they "bypass[ed] Wisconsin's mortgage foreclosure laws." The court then rejected CMM's claim that the Payback Agreement was ambiguous. The court explained, "The Payback Agreement is unprofessionally drafted, but it is not ambiguous. It obligates … CMM to pay money in 365 days and to complete work in Buildings 1 through 5. If [CMM] fail[s] to do so, Tribella can liquidate assets and apply the proceeds toward [CMM's] outstanding financial obligation." The court specifically rejected CMM's argument that the Payback Agreement was

9

ambiguous as to the amount that CMM owed "because the words 'estimate' and 'approximate' were used in connection with the amount due." The court reasoned:

> The amount [CMM] agreed to pay was the "amount detailed in Section 1." That amount totaled $625,826.04, which represented an estimated amount that the parties owed to subcontractors and suppliers from the Marquee Court and Foxglove Circle projects. Therefore, it is reasonable to conclude from the terms of the agreement that the parties settled on the estimated—not exact—amounts owed to the subcontractors and suppliers.

> The Court's interpretation is buttressed by other terms. … CMM agreed to pay monthly interest, which cannot be calculated without a known principal amount. Further, the agreement did not contemplate an accounting at a later date or a "rolling calculation" because interest was owed roughly 30 days after the agreement was signed. Similarly, … CMM needed to pay the principal within 365 days. It makes no sense to establish interest payments and a maturity date without any provision for determining the principal owed.

¶20 Having concluded that the Payback Agreement was enforceable and unambiguous, the circuit court "turn[ed] its attention to performance." The court stated it was "undisputed" that CMM had "not performed" the Payback Agreement "by failing to pay the amounts due," given than CMM had "made no payments whatsoever." As such, the court concluded that CMM had breached the Payback Agreement and owed Tribella $625,826.04, plus interest.

¶21 Given its conclusions regarding the enforceability of the Payback Agreement, the circuit court further concluded that "most of [CMM's] causes of action fail as a matter of law." Specifically, the court determined that Tribella was entitled to summary judgment on CMM's claims for quiet title, declaratory judgment, and breach of the Payback Agreement. The court also limited CMM's claims for breach of the development agreements and unjust enrichment, granting

10

Tribella summary judgment on those claims as they related to an additional project in Forest Lake, Minnesota, and further stating that those claims survived only with respect to allegations "arising after May 25, 2017 on other projects."

¶22     The circuit court also granted summary judgment in favor of Tribella on its counterclaims for breach of contract, declaration of an interest in real estate, and foreclosure.  With respect to the foreclosure counterclaim, specifically, the court stated:

> [Tribella] request[s] reformation of deeds and foreclosure. It is undisputed that CMM delivered deeds as a form of collateral, not as an unconditional conveyance.  The Payback Agreement reflects that intent with restrictions on Tribella's ability to liquidate the assets.  A deed may be reformed into a mortgage when it carries out the intent of the parties.  [*See Maslowski v. Bitter*, 12 Wis. 2d 337, 342, 107 N.W.2d 197 (1961).]  Because [CMM has] defaulted and Tribella has the right to liquidate the properties, Tribella may foreclose on the reformed instruments.  The Court will defer entry of a judgment of foreclosure until the outstanding interest is calculated.  [Tribella] shall submit [its] calculations and a proposed judgment of foreclosure in 14 days.  [CMM has] 14 days to object.

(Footnote omitted.)

¶23     Finally, the circuit court concluded that the Klewickis "have no personal liability for any of the claims asserted by" CMM.  Accordingly, the court granted the Klewickis summary judgment on all of CMM's claims against them.

¶24     On January 27, 2025, over CMM's objection, the circuit court entered a judgment awarding Tribella $899,633.34, comprised of the $625,826.04 that CMM owed under the Payback Agreement, plus $273,807.30 in interest.  The judgment also granted Tribella a judgment of foreclosure as to three of the

properties listed as collateral in the Payback Agreement and dismissed the Klewickis from the case.

¶25 CMM filed a motion for relief from the circuit court's judgment, for reconsideration, or, alternatively, to stay imposition of the judgment. As relevant here, CMM argued that the court had made a manifest error of law by failing to give effect to Section 8.1 of the Payback Agreement, which stated: "[CMM's] portion of Net Proceeds from sale of property from joint projects at Marquee Court – Stillwater, Troy Burne – Hudson, Foxglove – Hudson shall be applied to [CMM's] balance only after all notes are paid in full." CMM contended that by "disregard[ing]" Section 8.1, the court "failed to enforce a contractual provision that would have reduced the balance owed under the [Payback Agreement] by applying the net proceeds from these joint projects."

¶26 CMM also renewed its argument that summary judgment was premature and that the circuit court should have given it additional time to conduct discovery. In addition, in its reply brief in support of its motion, CMM informed the court that it had taken the depositions of Joseph and Tanae Klewicki while the motion was pending, and it contended that their deposition testimony constituted newly discovered evidence under WIS. STAT. § 806.07(1)(b). CMM asserted that the Klewickis' testimony was "highly material" because it "establishe[d] that the amount asserted as the initial indebtedness in the [Payback Agreement] as due [was] no longer applicable" and showed that Joseph Klewicki "maintained a 'rolling ledger' that he used to 'true up' the partnership balances between the parties over all of the projects."

¶27 The circuit court denied CMM's motion for reconsideration and relief from judgment during an oral ruling on March 28, 2025. The court stated

12

there were no "grounds for reconsideration" of its summary judgment decision because CMM merely disagreed with the court's decision, but CMM's "disagreement over facts and law does not constitute a manifest error because it does not involve a wholesale disregard, misapplication, or failure to recognize controlling precedent." The court also noted that a motion for reconsideration "is not a vehicle for reasserting old arguments or repackaging them into new ones in hopes of a different outcome." As for CMM's newly discovered evidence claim, the court reasoned that

> the Klewickis' testimony was available to [CMM] at summary judgment if they had simply taken the Klewickis' deposition[s]. The evidence was there for the taking but [CMM] chose not to. [CMM] decided to take the Klewickis' d[e]position[s] after summary judgment was granted. Now [CMM] want[s] another bite at the apple.
>
> The Klewickis' depositions do not constitute newly discovered evidence because their testimony was available for summary judgment. [CMM] chose not to take them.

¶28     In April 2025, CMM filed another motion for relief from judgment, again arguing that relief was warranted under WIS. STAT. § 806.07(1)(b) based on the existence of newly discovered evidence. Once again, CMM asserted that Joseph Klewicki's deposition testimony[5] "reveal[ed] material information not previously disclosed"—namely, that the $625,826.04 figure set forth in the Payback Agreement did not accurately reflect the amount that CMM owed Tribella and that "Tribella did maintain a 'rolling' total [of the amount owed by CMM] during the entirety of the projects."

---

[5] CMM's motion also referred to the deposition testimony of another individual—Jason Wurzer. On appeal, CMM does not mention Wurzer, explain the significance of his deposition testimony, or argue that his testimony constituted newly discovered evidence for purposes of WIS. STAT. § 806.07(1)(b). As such, we do not address Wurzer's deposition testimony further.

¶29    On May 5, 2025, the circuit court entered a written order "summarily" denying CMM's second motion for relief from judgment. The court explained that "[t]he 'new evidence' offered by [CMM] were the very same depositions that the Court rejected a month earlier" and that "[t]he depositions are not 'new evidence,' regardless of whether they are viewed under a motion for reconsideration or a motion for relief from judgment."

¶30    CMM now appeals both the circuit court's January 27, 2025 judgment and the court's May 5, 2025 order denying CMM's motion for relief from judgment.

## DISCUSSION

### I.  Partial summary judgment

¶31    On appeal, CMM argues that the circuit court erred by granting partial summary judgment in favor of Tribella. We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶32    In this case, our review of the circuit court's summary judgment ruling also requires us to interpret the Payback Agreement. The purpose of contract interpretation is to determine the parties' intent. *Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶9, 266 Wis. 2d 124, 667 N.W.2d 751. "When the terms of a contract are plain and unambiguous, we will construe the contract as it

14

stands." ***State v. Peppertree Resort Villas, Inc.***, 2002 WI App 207, ¶14, 257 Wis. 2d 421, 651 N.W.2d 345. The interpretation of an unambiguous contract is a question of law that we review independently. ***Town Bank v. City Real Est. Dev., LLC***, 2010 WI 134, ¶32, 330 Wis. 2d 340, 793 N.W.2d 476. Whether a contract is ambiguous is also a question of law for our independent review. ***Kernz***, 266 Wis. 2d 124, ¶8.

¶33 CMM argues that the circuit court erred by construing the Payback Agreement "in a way that rejected and ignored key terms and obligations" and improperly "favored the drafting party—[Tribella]—which was contrary to basic contract construction law." As in the circuit court, CMM emphasizes that the Payback Agreement used the word "approximately" when stating the amount due to suppliers for the Marquee Court Project and later stated that the total amount owed by CMM was "estimated" to be $625,826.04. CMM asserts that the agreement's use of the words "approximately" and "estimated" shows that the parties understood that the amount CMM owed Tribella was "fluid." As a result, CMM contends that a consideration of extrinsic evidence is necessary to determine the amount that it actually owes under the Payback Agreement.

¶34 We disagree. The Payback Agreement unambiguously required CMM to pay Tribella a fixed sum—namely, $625,826.04. Although the Payback Agreement described the amount that CMM had failed to pay subcontractors and suppliers for one project as "approximate[]," which resulted in the total amount of CMM's obligation being an "estimate[]," by entering into the Payback Agreement, the parties stipulated that the amount owed by CMM was $625,826.04. Whether that figure ultimately turned out to be an accurate reflection of the amount owed to

15

Tribella by CMM is immaterial; when CMM signed the Payback Agreement, it agreed to repay Tribella that amount.

¶35     Other provisions in the Payback Agreement further support this interpretation.  The Payback Agreement required CMM to make monthly interest payments, which were calculated by multiplying the "[p]rincip[al] balance" by the prime rate.  The Payback Agreement also gave Tribella "the right to liquidate" the collateral listed in Section 2 if CMM failed to "pay [the] full amount due within 365 days" or if CMM was "late more than 30 days on any payment obligation."

¶36     We agree with Tribella that these provisions "make perfect sense if the principal is fixed" but "make far less sense if the principal is subject to change."  As Tribella correctly notes, under CMM's reading, CMM "would be required to make monthly interest payments while the true principal [was] unknown and pay off an unknown principal within a year."  In addition, Tribella observes that the Payback Agreement contains no provisions "outlining how the parties [would] determine whether and when to revise the principal or what accounting would determine the revised principal amount," nor does the Payback Agreement contain any provisions "addressing what would happen to past interest payments after any hypothetical increase or decrease in the principal."  The lack of such provisions supports our conclusion that the Payback Agreement unambiguously required CMM to pay a fixed principal amount of $625,826.04.

¶37     CMM also relies on Section 8.1 of the Payback Agreement, which provided: "[CMM's] portion of Net Proceeds from sale of property from joint projects at Marquee Court – Stillwater, Troy Burne – Hudson, Foxglove – Hudson

16

shall be applied to [CMM's] balance only after all notes are paid in full."[6] According to CMM, this language shows that the amount it owed under the Payback Agreement was intended to be "fluid because credits were to be applied to that estimated balance as the parties' ongoing projects closed." We agree with Tribella, however, that this language merely means that "CMM's portion of the net proceeds, if any, go[es] toward paying off the principal," and it does not mean that the parties intended the amount owed by CMM under the Payback Agreement to be "fluid."

¶38 CMM also argues that the circuit court erred in its summary judgment analysis because there is a genuine dispute of material fact as to the net proceeds from the Marquee Court, Troy Burne, and Foxglove Projects. CMM contends that those net proceeds "have not been determined" because the parties' claims regarding alleged breaches of the various development agreements have not yet been resolved. Consequently, CMM asserts that "obvious material factual disputes remain regarding whether … CMM owes *any amount* under the Payback Agreement (let alone the hundreds of thousands of dollars stated in the judgment)."

¶39 We reject this argument. First, we reiterate our conclusion that the Payback Agreement unambiguously required CMM to pay Tribella $625,826.04. Second, we note that CMM does not dispute Tribella's assertion that CMM "never made any payments required by the Payback Agreement." Third, Tribella asserts that "the record conclusively shows that CMM is not entitled to any offsets" under

---

[6] In its appellate brief, Tribella concedes that it is "undisputed that the notes on these three projects were paid in full."

17

Section 8.1 of the Payback Agreement because "[t]here are no net proceeds" from the Troy Burne, Foxglove, and Marquee Court Projects. Tribella cites significant evidence from the record in support of this assertion. In reply, CMM argues that the facts regarding its entitlement to an offset *are* disputed because there is evidence showing that Tribella owes money to CMM with respect to the Troy Burne, Foxglove, and Marquee Court Projects. However, regardless of whether Tribella may owe money to CMM under the parties' development agreements— which is an issue that remains to be litigated—CMM does not meaningfully dispute Tribella's claim that the undisputed facts show that the Troy Burne, Foxglove, and Marquee Court Projects all resulted in net losses. As such, CMM does not meaningfully dispute Tribella's assertion that CMM is not entitled to any offsets under Section 8.1 of the Payback Agreement because there were no net proceeds to apply to the amount that CMM owed under that agreement.

¶40    For these reasons, we reject CMM's claim that the circuit court erroneously granted partial summary judgment in favor of Tribella with respect to the parties' claims pertaining to the Payback Agreement. The court properly determined that the Payback Agreement unambiguously required CMM to pay

Tribella $625,826.04, plus interest, and that CMM had failed to make the required payments.[7]

## II. Reformation

¶41     CMM next argues that the circuit court erred by reforming the deeds that CMM provided to Tribella as collateral under the Payback Agreement into mortgages.  More specifically, CMM asserts that the court failed to apply the correct legal standard for reformation, erroneously exercised its discretion by granting reformation, and "incorrectly overlooked" Tribella's failure to plead a reformation claim.  (Formatting altered.)

¶42     We reject CMM's argument that the circuit court failed to apply the correct legal standard or otherwise erroneously exercised its discretion when reforming the deeds into mortgages.  Reformation is an equitable doctrine that allows a court to reform a written instrument that does not express the true intentions of the parties. ***Chandelle Enters. v. XLNT Dairy Farm, Inc.***, 2005 WI App 110, ¶18, 282 Wis. 2d 806, 699 N.W.2d 241.  Although reformation typically requires a showing of mutual mistake or fraud, *see **Hennig v. Ahearn***, 230 Wis. 2d 149, 174, 601 N.W.2d 14 (Ct. App. 1999), our supreme court has

---

[7] On appeal, in the section of its brief challenging the circuit court's partial summary judgment ruling, CMM also argues that the court erred by ignoring "evidence of performance" and "erroneously asserting that such evidence was 'parol[] evidence.'"  The court did not, however, use the term parol evidence in its summary judgment decision.  It appears that CMM is instead referring to the court's March 28, 2025 oral ruling denying CMM's motion for reconsideration and relief from judgment.  In any event, CMM asserts that the evidence in question "demonstrated that the balance due under the Payback Agreement as of June 2021 was less than the principal balance set forth in the Payback Agreement."  We reject this argument because, as we have already explained, the circuit court properly concluded that the Payback Agreement unambiguously required CMM to pay Tribella $625,826.04, plus interest.

recognized that a different rule applies when a deed is reformed into a mortgage, *see Maslowski*, 12 Wis. 2d at 341-42. The *Maslowski* court explained that "[a] deed, though absolute in form, may be shown by parol to have been intended as security and, between the parties, will have the effect of a mortgage" when there is "clear and convincing" evidence that the deed "was intended as security." *Id.* at 341.

¶43 The circuit court expressly relied on *Maslowski* when reforming the deeds in this case into mortgages. Furthermore, we agree with Tribella that the "clear and convincing" evidence standard was satisfied here, as required for reformation of the deeds, because the Payback Agreement constitutes parol evidence unambiguously showing that the parties intended the deeds to be security for CMM's obligations under the Payback Agreement. *See id.*

¶44 The Payback Agreement: (1) specified an amount that CMM agreed to pay Tribella—i.e., $625,826.04, plus interest; (2) referred to that amount as a "debt"; and (3) stated that CMM agreed to deed certain properties to Tribella as "[c]ollateral." The Payback Agreement further provided that the deeds would be transferred back to CMM "[u]pon receipt of the full amount" owed to Tribella, thus "removing all [of Tribella's] interest in [the] collateral." The Payback Agreement also gave Tribella "the right to liquidate" the collateral under certain conditions, including if CMM failed to pay the full amount due within one year. In addition, the Payback Agreement provided that if a property was liquidated and the proceeds exceeded the amount that CMM owed to Tribella, any remaining collateral would be "released." However, if any balance remained "after disposal and sale of [all the] properties, that amount [would] still remain the obligation of [CMM] to pay." Given these unambiguous provisions of the Payback Agreement,

20

the circuit court correctly concluded that it was "undisputed that CMM delivered [the] deeds as a form of collateral, not as an unconditional conveyance."

¶45     On appeal, CMM does not cite any evidence undermining the circuit court's conclusion regarding the parties' intent.  Instead, CMM merely asserts that "in opposing [Tribella's] motion [for summary judgment], [CMM] argued that the deeds were not mortgages," and "[t]his difference in the parties' stated intent created—at a minimum—a dispute of fact regarding the parties' intentions."  In the summary judgment brief in question, however, CMM acknowledged that under the Payback Agreement, CMM was "required to deliver the deeds to six properties to [Tribella] to hold *as collateral*."  (Emphasis added.)  Moreover, during his deposition, Jason Johnson conceded that when he signed the Payback Agreement, he understood "that my deeds to my property were going to be held *as collateral*." (Emphasis added.)   CMM does not cite any evidence—as opposed to mere argument—in support of a conclusion that the parties did not intend the deeds to be security for CMM's obligations under the Payback Agreement.

¶46     CMM also argues that the circuit court erred by reforming the deeds into mortgages because Tribella "never assert[ed] a claim for reformation" in its answer and counterclaims.  According to CMM, "the first time [Tribella] broached the notion of reformation was in [its] motion for summary judgment."

¶47     We agree with Tribella that although Tribella did not use the word "reformation" in its answer and counterclaims, it nevertheless "pleaded sufficient facts to raise a reformation claim."  "A plaintiff is not required to put labels on the allegations in the complaint in order to state a valid claim.  It is the sufficiency of the facts alleged that control[s] the determination of whether a claim for relief is properly ple[]d."  ***Strid v. Converse***, 111 Wis. 2d 418, 422-23, 331 N.W.2d 350

(1983); *see also Tikalsky v. Friedman*, 2019 WI 56, ¶14, 386 Wis. 2d 757, 928 N.W.2d 502 ("A complaint's success does not depend on accurate labeling.").

¶48     Here, Tribella alleged in its answer and counterclaims that the parties had entered into the Payback Agreement—which was incorporated by reference—for the repayment of funds that CMM owed to Tribella. Tribella further alleged that CMM had transferred the deeds to Tribella as "collateral" and "as security for [CMM's] obligations and duties under the Payback Agreement" and that the deeds "were held as mortgages." These allegations were sufficient to put CMM on notice that Tribella was alleging that the deeds were intended by the parties to be mortgages and that Tribella could seek any available remedies to enforce them.

¶49     Furthermore, as Tribella aptly observes, "[i]t is unclear how, on the one hand, CMM contends that Tribella failed to plead a claim for reformation while, on the other hand, [CMM accepts] that Tribella pleaded a claim for foreclosure." Tribella correctly notes that its "foreclosure claim [was] premised on the fact that the parties intended the deeds to be mortgages." *See Glover v. Marine Bank of Beaver Dam*, 117 Wis. 2d 684, 693, 345 N.W.2d 449 (1984) ("A foreclosure suit has been said to be merely a proceeding for the legal determination of the existence of the mortgage lien, the ascertainment of its extent, and the subjection to a sale of the estate pledged for its satisfaction." (citation omitted)). As such, the inclusion of a foreclosure claim in Tribella's answer and counterclaims necessarily implied that Tribella was also requesting, as a prerequisite to foreclosure, that the circuit court reform the relevant deeds into mortgages.

¶50    Under these circumstances, it is of no moment that Tribella's answer and counterclaims did not specifically use the words "reform" or "reformation." We therefore reject CMM's argument that Tribella failed to adequately plead a reformation claim.

## III.  Motion for relief from judgment

¶51    Finally, CMM argues that the circuit court erred by denying CMM's second motion for relief from judgment, which sought relief pursuant to WIS. STAT. § 806.07(1)(b).  "A circuit court's order denying a motion for relief under [§ 806.07] will not be reversed on appeal absent an erroneous exercise of discretion." *Nelson v. Taff*, 175 Wis. 2d 178, 187, 499 N.W.2d 685 (Ct. App. 1993).  "We will not find an erroneous exercise of discretion if the record shows that the [circuit] court exercised its discretion and that there is a reasonable basis for its decision." *Id.*

¶52    Under WIS. STAT. § 806.07(1)(b), a circuit court may grant a party relief from a judgment based on "[n]ewly-discovered evidence which entitles a party to a new trial under [WIS. STAT. §] 805.15(3)."  Under § 805.15(3), a party is entitled to a new trial based on newly discovered evidence when four factors are satisfied:

> (a) The evidence has come to the moving party's notice after trial; and
>
> (b) The moving party's failure to discover the evidence earlier did not arise from lack of diligence in seeking to discover it; and
>
> (c) The evidence is material and not cumulative; and
>
> (d) The new evidence would probably change the result.

23

Because these factors "are phrased in the conjunctive," "[a] party has to establish all four factors." ***Wenzel v. Wenzel***, 2017 WI App 75, ¶17, 378 Wis. 2d 670, 904 N.W.2d 384.

¶53 In its second motion for relief from judgment, CMM argued that Joseph Klewicki's deposition testimony constituted newly discovered evidence under WIS. STAT. § 805.15(3). The circuit court had already concluded, however, that the Klewickis' deposition testimony did not qualify as newly discovered evidence because CMM could have taken the Klewickis' depositions before the court ruled on Tribella's summary judgment motion, but CMM chose not to do so. In other words, the court found that CMM's "failure to discover the evidence earlier … ar[o]se from lack of diligence in seeking to discover it."[8]   *See* § 805.15(3)(b).

¶54 The circuit court's finding in that regard was not clearly erroneous. *See **Ritt v. Dental Care Assocs., S.C.***, 199 Wis. 2d 48, 81-82, 543 N.W.2d 852, (Ct. App. 1995) (requiring a "finding" as to a litigant's "diligence, or lack of diligence," in failing to discover evidence earlier); *see also **Phelps v. Physicians Ins. of Wis.***, 2009 WI 74, ¶34, 319 Wis. 2d 1, 768 N.W.2d 615 ("We uphold a circuit court's findings of fact unless they are clearly erroneous."). CMM commenced this lawsuit in May 2023. Tribella took Jason Johnson's deposition in May 2024 and then moved for partial summary judgment in July 2024.

---

[8] There is no support in the record for CMM's assertion that the circuit court "conflated two separate elements [under WIS. STAT. § 805.15(3)]—whether the evidence was new and discovered after the decision was rendered and whether the moving party was diligent in seeking to obtain the evidence." The court clearly found, under § 805.15(3)(b), that CMM's failure to discover the evidence earlier arose from CMM's lack of diligence in seeking to discover the evidence.

Conversely, CMM waited to take the Klewickis' depositions until February 2025—after the circuit court had already granted Tribella partial summary judgment.

¶55 CMM asserts that it was unable to take the Klewickis' depositions earlier because of Tribella's delay in fully responding to CMM's discovery requests. According to CMM, taking the Klewickis' depositions "without the necessary compelled documentation would have been incomplete." The circuit court, however, did not find this argument persuasive. We agree with Tribella that, on appeal, "CMM essentially argues that a factfinder could have seen things differently—namely, that it was reasonable for CMM to delay deposing [the Klewickis]." However, "[f]indings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding," *State v. Grady*, 2025 WI 22, ¶17, 416 Wis. 2d 283, 21 N.W.3d 353 (citation omitted), "even if a reasonable person could find otherwise," *id.*, ¶21.

¶56 Here, because the evidence would permit a reasonable person to make the same finding as the circuit court with respect to CMM's lack of diligence in discovering the new evidence, we may not disturb that finding on appeal. And because the court's diligence finding is not clearly erroneous, the court did not erroneously exercise its discretion by denying CMM's motion for relief from judgment under WIS. STAT. § 806.07(1)(b). *See Wenzel*, 378 Wis. 2d 670, ¶17 (stating that "[a] party has to establish all four factors" in WIS. STAT. § 805.15(3) to show the existence of newly discovered evidence).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.